## TURNER v. BANKERS & SHIPPERS INS. CO. OF NEW YORK.*

### No. 17136.

Court of Appeal of Louisiana. Orleans.
March 13, 1939.

Deutsch & Kerrigan, of New Orleans, for appellant.

George Piazza and B. M. Goodman, both of New Orleans, for appellee.

McCALEB, Judge.

This controversy arises under the following state of facts:

On October 14, 1936, the plaintiff, Mrs. James Olin Turner, purchased an Oldsmobile automobile and executed a chattel mortgage thereon in favor of the Southern Acceptance Corporation. On the same day, the defendant, Bankers & Shippers Insurance Company, issued to the mortgagee, the Southern Acceptance Corporation, its open policy No. E–831508 protecting said mortgagee and Mrs. Turner, the owner of the car, against any loss (subject to a deduction of $50.00) which they might suffer in the event the automobile was damaged as the result of a collision or by being overturned.

On December 6, 1936, while this insurance policy was in full force and effect, the automobile was overturned in a collision and was damaged as a consequence thereof. The accident happened near Baton Rouge, Louisiana, and, immediately thereafter, the vehicle was taken to Highland Motors, Inc., a garage and repair shop located in that city. Mrs. Turner promptly notified the insurance company of the mishap and an investigation was conducted by the latter's representatives in an effort to determine the nature and extent of the loss. After obtaining estimates from three concerns engaged in the automobile repair busi-

*Rehearing denied March 27, 1939.

ness in Baton Rouge, with respect to the extent of the damage, the insurer selected Highland Motors, Inc. to perform the necessary work in order that the vehicle might be rehabilitated. The estimate of Highland Motors, Inc. for the repairs necessary to place the car in its previous condition was $117.15 and a proof of loss was executed by Mrs. Turner in conformity therewith.

The repairs were completed sometime during the month of January 1937 and the car was delivered by Highland Motors, Inc. to Mrs. Turner at New Orleans. Mrs. Turner refused to accept the machine, claiming that the repair work was unsatisfactory in that the top of the vehicle had not been placed in the same good condition which had existed previous to the accident. At the time plaintiff objected to the condition of the car, Mr. L. C. Hoffmann, the adjuster and representative of the defendant insurer, was present and he conceded that the work of Highland Motors, Inc. had not been sufficient to restore the automobile to its previous state. It was thereupon agreed that, in order to rehabilitate the car, it would be necessary to place a new turret top upon it. The insurance company took the position that, inasmuch as Highland Motors, Inc. had represented that it could place the car in first class condition for the amount originally estimated, it should pay part of the expense which would be incurred as a result of its error in believing that the top of the damaged vehicle was susceptible of repair. The motor company, conceding its error, agreed to bear one half of the expense and, in accordance with this understanding, the car was thereafter taken back to Baton Rouge for the purpose of installing a new turret top.

In March 1937, the work was completed by Highland Motors, Inc. and the car was again delivered to Mrs. Turner at New Orleans. Upon her inspection of the vehicle, she found that the upholstery was in a damaged condition and she refused to accept it in that state. Mr. Hoffmann, the representative of the insurance company, contended that, inasmuch as Mrs. Turner had not previously complained about the damage to the upholstery, the insurance company would not be liable for the cost of its replacement. Mrs. Turner, having been deprived of the use of the car from the date of the accident, was anxious to obtain its possession and Highland Motors, Inc. was not willing to release the vehicle from its custody unless payment was received for the work it had performed.

With affairs in this state, Mr. Hoffmann suggested that he would prevail upon the Southern Acceptance Corporation, the mortgagee of the car, to advance to Highland Motors, Inc. the sum of $83.72 (one half of the cost of the new turret top) and that, if Mrs. Turner would accept delivery of the car, he would reserve to her the right to make an additional claim against the insurance company for damages to the upholstery of the automobile. This proposal was accepted by Mrs. Turner. Accordingly, she executed a second proof of loss and on the reverse side thereof, it was provided:

"It is understood and agreed that in signing this proof of loss of which this agreement constitutes a part, Mrs. James O. Turner, the named assured, does not waive any claim she might have for damage to the upholstering inside the car.

"It being further understood that the said Mrs. Turner will have said damages estimated and present formal claim in due course against the Bankers and Shippers Insurance Co.

"It is also agreed that the sum of eighty three and 72/100 dollars mentioned in the attached proof of loss is an additional payment to the sum of one hundred seventeen and 15/100 dollars previously paid to the named assured.

"[Signed] Bankers & Shippers Insurance Co.
"By Emery & Kaufman, Ltd.,
"As per L. C. Hoffmann"

When the above quoted proof of loss was submitted to the home office of the defendant, it admitted liability for one half of the cost of the turret top and reimbursed the Southern Acceptance Corporation for the advance made to Highland Motors, Inc. but it rejected plaintiff's claim with respect to the damaged upholstery and advised its New Orleans agents by letter to that effect. However, it does not appear that Mrs. Turner was thereafter advised of this fact by the defendant's representatives.

Mrs. Turner contends that, after the second proof of loss had been executed by her, she was in constant communication with Mr. Hoffmann and that he at all times pretended that the insurance company was going to pay for the damage to the upholstery of the automobile. It should be stated, how-

ever, that her testimony is somewhat vague in this respect and that Mr. Hoffmann positively declares that, after Mrs. Turner had submitted the second proof of loss, he had no further communications with her.

During the month of November 1937, Mrs. Turner had an estimate made of the cost necessary to repair the upholstery of the automobile and entered into an agreement with the Pontchartrain Motors, Inc. of New Orleans to do the work for $122.-70. Being unable to obtain satisfaction from the insurance company for the payment of this amount, she employed an attorney who made formal demand upon the company. Upon the latter's refusal to pay, this suit was instituted by the plaintiff on June 14, 1938.

The defendant resists liability on the claim chiefly upon the ground that the action is prescribed by virtue of a provision in its policy which reads as follows: "No suit or action on this policy or for the recovery of any claim hereunder shall be sustainable in any court of law or equity unless the Assured shall have fully complied with all of the foregoing requirements, nor unless commenced within twelve (12) months next after the happening of the loss; * * *"

In the court below, there was judgment in favor of plaintiff in the amount prayed for. The defendant has appealed from the adverse decision.

The main question in the case, to which we give our immediate attention, is whether the trial judge committed error in overruling the defendant's plea of prescription.

It is well established in the jurisprudence of this State that provisions in insurance policies shortening the term of prescription are valid and enforcible. See Ray v. Liberty Industrial Life Insurance Co., La.App., 180 So. 855, and cases there cited.

Counsel for Mrs. Turner, however, maintain that the limitation of the policy has been waived by the defendant. If this be true, defendant's plea is untenable for it is well recognized that stipulations in insurance policies, shortening the statutory term in which actions may be brought, may be waived by the insurer. See Couch Cyclopedia of Insurance Law, Vol. 7, Sec. 1656, Thompson v. Phenix Insurance Co., 136 U.S. 287, 10 S.Ct. 1019, 34 L.Ed. 408; Lynchburg Cotton Mill Co. v. Travelers'

Insurance Co., 4 Cir., 149 F. 954, 9 L.R.A., N.S., 654; and Fellman v. Royal Insurance Co., 5 Cir., 184 F. 577.

In Thompson v. Phenix Insurance Co., supra [136 U.S. 287, 10 S.Ct. page 1023] the Supreme Court of the United States observed: "It remains only to consider the question arising out of that clause of the policy limiting the time within which a suit or action against the company for the recovery of a claim arising out of its provisions may be sustained. While the validity of such a stipulation cannot be disputed (Riddlesbarger v. Hartford Ins. Co., 7 Wall. 386, 389 [19 L.Ed. 257]) we do not doubt that it may be waived by the company; and such waiver need not be in writing. *It may arise from such a course of conduct upon its part as will equitably estop it from pleading the prescribed limitation in bar of a suit by the insured.*" (Italics ours)

And, again, after citing with approval the case of Mickey v. Burlington Insurance Co., 35 Iowa 174, 180, 14 Am.Rep. 494, the court declared: "In the case last cited, it was properly said that it would be contrary to justice for the insurance company to hold out the hope of an amicable adjustment of the loss, and thus delay the action of the insured, and then be permitted to plead this very delay, caused by its course of conduct, as a defense to the action when brought."

In the case at bar, it appears that, shortly after the accident, the insurance company admitted its liability under the policy and undertook to have Mrs. Turner's car repaired by Highland Motors, Inc. When it did so, it constituted the repairer of the vehicle as its agent and it represented, tacitly at least, that the repair work, when completed, would substantially restore her car to the condition it was prior to the accident. Under such circumstances, there was no occasion for the plaintiff to believe that it would be necessary to have a judicial determination of her rights under the policy. In truth, the present action is not brought for the purpose of enforcing defendant's liability under its contract, since responsibility has always been conceded by it. On the contrary, plaintiff seeks to compel the defendant to carry out its promise to rehabilitate her damaged vehicle.

We find that this case is indistinguishable from that of Fellman v. Royal Insurance

Co., supra. There, it appeared that the plaintiff had insured her real estate against fire in three companies, viz: London & Lancashire Fire Insurance Company, Royal Insurance Company and Lancashire Insurance Company. The policies in the first two named companies protected her against all direct loss or damage to her property by fire. The other policy in the Lancashire Insurance Company protected her from loss of rent in the event the building should be rendered untenantable as a result of fire. In March 1901 the building was almost totally destroyed by a fire. Thereafter, proofs of loss were submitted to the three insurance companies and appraisers and an umpire were appointed to fix the amount of the loss in accordance with the terms of each policy. Later, in August 1901, the appraisers made a report which was unsatisfactory to the assured. She thereupon filed suit in the Circuit Court for the Eastern District of Louisiana against the Royal Insurance Company and the London & Lancashire Fire Insurance Company to correct the award of the appraisers as to the amount of the liability of those insurers. The Lancashire Insurance Company was not made a party to that suit. After hearing in the matter, the court rendered judgment in plaintiff's favor and increased the award of the appraisers. In 1906, the plaintiff brought action against the Royal Insurance Company, as the successor to the Lancashire Insurance Company, seeking recovery of the award under the policy issued by the latter. The defendant resisted liability in the case on the ground that more than one year had elapsed between the date of the fire and the filing of the suit, pointing out that the Lancashire Insurance Company had not been made a party to plaintiff's action wherein she sought to have the appraisers' awards set aside with respect to the Royal Insurance Company and the London & Lancashire Fire Insurance Company. The district court sustained the defendant's contention but on appeal the decision was reversed. The court said: "We think both these assignments well taken. The averments of the petition and of the plea show that the plaintiff's action is not an action on the policy within the true meaning of the provision pleaded by the defendant, but an action on the award made, under the policy. The defendant having admitted liability on the award, and made a tender to plaintiff of the amount due as fixed by the award, there is no room for the application of the limitation pleaded. So far as the claim for insurance is disputed, and may be a subject of litigation between the parties, the insurers may well provide in their contracts that the action shall be speedily brought so that the extent of their liability may be settled while the facts are recent and the witnesses by whom they are to be proved are readily accessible, but there is no such reason for the limitation of the time within which a suit shall be brought when it is sought to recover only the amount under the policy which has been ascertained and admitted to be justly due by the insurers. Such conditions in the policy, like all others intended for the benefit of the insurers, may be waived by them, and as the condition is a harsh one, and in derogation of the limitation of actions fixed by law, in its bearing on the insured, and works a forfeiture when upheld, the courts will not require very stringent evidence in order to defeat its application. 2 May on Insurance (4th Ed.) Sections 488, 491, pp. 1154, 1160; Thompson v. Phenix Insurance Co., 136 U.S. 287, 10 S.Ct. 1019, 34 L.Ed. 408; Godchaux v. Merchants' Mutual Insurance Co., 34 La. Ann. 235; Hanover Fire Insurance Co. v. Hatton (Ky.) 55 S.W. 681."

In the case at bar, the insurance company admitted that it was responsible to Mrs. Turner under the terms of its policy and it undertook to cause her car to be repaired. Her present suit for the cost of repairing the damaged upholstery of the vehicle is not an action founded upon the policy but is based upon the failure of the insurance company to carry out its agreement to place her car in the condition it was prior to the accident.

Counsel for the defendant, however, contend that Highland Motors, Inc. was Mrs. Turner's agent and not the agent of the insurance company and they argue that, under such circumstances, the loss respecting the damage to the upholstery must be borne by the plaintiff. We are unable to discern any merit in this proposition because it is our opinion that the evidence clearly establishes that the insurance company employed Highland Motors, Inc., as its agent to make the necessary repairs.

 Counsel also maintain that the agreement between Mrs. Turner and the company merely had the effect of suspending the operation of the contractual limitation in the policy and that this prescription

commenced to run in March 1937 when the defendant denied that it was liable for the damage to the upholstery of the car. The proposition is not well founded. In the first place, as we have above pointed out, plaintiff's suit is not based upon the insurance policy but upon the agreement made by the defendant (after conceding liability under its policy) to repair her car. Furthermore, the admission of liability under the policy operated as a waiver by the company of the contractual limitation inserted in the policy and its subsequent denial of responsibility for the damage to the upholstery of the automobile does not have the effect of reviving the policy stipulation. In such case, the statutory prescription of this State is applicable. See Couch on Insurance, supra, Lynchburg Cotton Mill Co. v. Travelers' Insurance Co., supra, and cases there cited.

■ The foregoing authorities and many others hold that, where the insurer has, by its conduct, waived the contractual limitation inserted for its benefit in the policy, the statutory limitation will govern the time in which an action should be commenced in the event a dispute arises subsequent to the waiver. However, it should be observed that, in order to deprive the insurer of its right to rely upon the contractual limitation, it must appear that there has been either an admission of liability on the part of the defendant and a promise by it to adjust the loss (which, as in the case at bar, constitutes an absolute waiver) or that discussions looking towards a settlement of the claim were continued for such a long period that the time left to the assured, after termination of the negotiations by the insurer's denial of liability, was not a reasonable time within which the action could be prepared and filed. Compare Blanks v. Hibernia Insurance Co., 36 La.Ann. 599.

■ A word with reference to the merits of the case. Counsel for defendant assert that plaintiff has failed to prove that the upholstery of the automobile was damaged as a result of the accident. The contention is not tenable. It is clearly shown that the upholstery was substantially damaged at the time the car was delivered to Mrs. Turner and we are convinced that the evidence submitted justifies the holding that its condition was attributable to the accident. Apart from this, we cannot 'see that it would change the result, if the up-

holstery was damaged while the car was being repaired by Highland Motors, Inc. as suggested by counsel, since the insurance company undertook to have the vehicle repaired and placed in the same condition it was prior to the accident and has failed to carry out its agreement.

For the reasons assigned, the judgment appealed from is affirmed.

Affirmed.